### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAYTONA BAE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-01064-DDC-GEB |
| | ) |
| KEN PAXTON, Attorney General of the | ) |
| State of Texas, MARKESHA MUHAMMAD, | ) |
| and SALLY MUHAMMAD, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPORT AND RECOMMENDATION AND NOTICE

This matter concerns the Court's Notice of Hearing and Order to Show Cause **(ECF No. 3)**, which required Plaintiff to appear in person on May 8, 2024, and explain why the undersigned should not recommend dismissal of this case. Plaintiff failed to appear. For this reason, and because, as explained below, the Court finds Plaintiff's Complaint lacks subject-matter jurisdiction and fails to state a claim upon which relief can be granted, the undersigned **recommends dismissal without prejudice**.

**I.     Notice**

Within fourteen (14) days after a party is served with a copy of this Report and Recommendation, any party, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), may file written objections to this Report and Recommendation. A party must file any objections within the fourteen-day period if the party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition.

## II.     Procedural Background[1]

On April 5, 2024, Plaintiff filed his Complaint against Ken Paxton, the Attorney General of the State of Texas, and two individuals, Markesha Muhammad and Sally Muhammad,[2] whom he describes as "informants." Plaintiff asserts diversity and federal question jurisdiction, and brings claims under 42 U.S.C. § 1983 (Civil action for deprivation of rights); 15 U.S.C. §§ 78dd-1 (Foreign Corrupt Practices Act of 1997); 18 U.S.C. § 1030 (Fraud and related activity in connection with computers); 18 U.S.C. §§ 2261 and 2261A (Interstate domestic violence and stalking); and 28 U.S.C. § 4101 (Definitions relating to the recognition of foreign defamation judgments).

The Court reviewed the Complaint upon filing but was unable to discern the factual and legal nature of Plaintiff's claims. Therefore, the Court ordered Plaintiff to appear in person on May 8, 2024 for a show cause hearing to explain why his case should not be recommended for dismissal.[3] Plaintiff, however, failed to appear. The Court thus summarizes the allegations in Plaintiff's Complaint to the best of its understanding.

Plaintiff brings his Complaint seeking a "cease and desist" order to stop purported "defamation (cyber libel)" and "harassment" by Defendants. In support, Plaintiff alleges

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1). This background information should not be construed as judicial findings or factual determinations.

[2] Plaintiff names the State of Texas in the Case Caption, but the body of the Complaint consistently refers to Ken Paxton, Markesha Muhammad, and Sally Muhammad as the Defendants. Therefore, the Court treats these individuals as the proper and intended defendants. *See Trackwell v. United States Gov't*, 472 F.3d 1242, 1243–44 (10th Cir.2007) ("[I]n a *pro se* case . . . when the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are."). Additionally, any lawsuit against the State of Texas is likely barred by Eleventh Amendment Immunity.

[3] ECF No. 3.

on May 4, 2023, Markesha Muhammad sent him a text message saying, "you are going to die tonight," and then threw a large rock through the window of a house where Plaintiff was staying in Houston, Texas. Plaintiff says the Houston Police were called, but never showed up.

Then, on November 5, 2023, Plaintiff alleges Markesha traveled from Texas to a house in Wichita, Kansas and physically assaulted him. While no time frame is given, he also claims she took his cell phones, stole his federal benefits, and hacked his social media accounts. On November 8, 2023, Plaintiff alleges Markesha and Sally Muhammad gave "information" about him to the Wichita Police before heading back to Texas.

Plaintiff next states in January of 2024, Markesha "lured" him to her residence in Texas. He says on January 7, 2024, Sally Muhammad showed up with a male family member to "inflict psychological abuse" on him knowing he has a "mental disability" to "distort, confuse, and influence his thoughts and actions." On February 16, 2024, Plaintiff states Markesha and Sally Muhammad gave "information" about him to the Houston Police.

Plaintiff further states on February 16, 2024, Ken Paxton, the Attorney General for the State of Texas, "executed his plan" against Plaintiff to put him in jail and extort money from him and the federal government. Plaintiff alleges Paxton used his position of power to spread "false information" about him through a "computer network, which carries a $40,000 bond on [Plaintiff's] body if captured by local governments." Plaintiff then states he had to cancel his travel plans back to Wichita because the Houston Police were searching for him. On March 4, 2024, Plaintiff was able to travel back to Wichita.

Finally, Plaintiff states on March 30, 2024, Markesha came to Wichita to "manipulate and abuse him" and threaten him with "jail time in the State of Texas." He alleges Markesha presently continues to "harass" him and is more "violent and dangerous" than ever because of Paxton's "incompetence and negligence." Plaintiff alleges Paxton is using Markesha and Sally Muhammad as "informants" to commit a "federal crime" against him, and Paxton is encouraging "domestic violence" against him because he is a black male with a mental disability. Plaintiff states the above actions caused him depression, anxiety, financial harm, loss of professional opportunities, and strained personal relationships.

## III.    Recommendation of Dismissal

### A.    Legal Standards Regarding Subject-Matter Jurisdiction and Failure to State a Claim Upon Which Relief can be Granted

Federal courts have limited jurisdiction and may only hear cases when specifically authorized to do so.[4] This authorization comes from two statutes, which provide the basis for the Court's subject-matter jurisdiction. The first statute, 28 U.S.C. § 1331, establishes federal question jurisdiction. The second statue, 28 U.S.C. § 1332, establishes diversity jurisdiction. If a plaintiff's complaint does not fall under at least one of these statutes, the Court does not generally have the power to preside over the case.

Thus, due to this limited authority, federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge

---

[4] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1022 (10th Cir. 2012) ("Federal subject matter jurisdiction is elemental. It cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts.").

from any party, and must dismiss the action at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.[5] Also, because federal courts' jurisdiction is limited, "there is a presumption against . . . jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."[6] "Conclusory allegations of jurisdiction are not enough."[7]

Because Plaintiff proceeds *pro se*,[8] his pleadings must be liberally construed.[9] The Court, however, does not "assume the role of advocate for the *pro se* litigant."[10] Liberally construing *pro se* filings does not mean supplying additional factual allegations or constructing a legal theory on the party's behalf.[11] And *pro se* plaintiffs, under Fed. R. Civ. P. 8, still bear "the burden of alleging sufficient facts on which a recognized legal claim could be based.[12]

More specifically, Fed. R. Civ. P. 8(a), requires every complaint to contain (1) a short and plain statement of the claim showing entitlement to relief; (2) a short and plain statement of the grounds for the Court's jurisdiction; and (3) a statement of the relief

---

[5] *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").
[6] *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) (quoting *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir.1991)).
[7] *Sigg v. District Court of Allen Cnty., Kan.,* No. 06-2436-KHV, 2007 WL 913926, at *1 (D. Kan. Mar. 23, 2007).
[8] The undersigned notes Sharon Cloud filed documents stating she is Plaintiff's "Legal Representative (ECF Nos. 8 and 11). However, Ms. Cloud has not provided the Court with evidence showing she is an attorney admitted to practice law in this District (ECF No. 9). Thus, the undersigned treats Plaintiff as *pro se* for purposes of this Report and Recommendation.
[9] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).
[10] *Id.*
[11] *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).
[12] *Hall*, 935 F.2d at 1110.

requested.  Under Fed. R. Civ. P. 12(b)(6), the Court can dismiss a complaint that fails to state a claim upon which relief can be granted, *i.e.,* that fails to comply with Rule 8(a).

In order to withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[13]  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]  However, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[15]  In other words, the complaint must state more than "labels and conclusions" and "[f]actual allegations must be enough to raise a right to relief above the speculative level."[16]

Finally, while dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving a plaintiff notice and opportunity to amend a complaint, a court may dismiss *sua sponte* when it appears the plaintiff could not prevail on the facts alleged, and allowing an opportunity to amend the complaint would be futile. [17]  Here, the Court noticed the show cause hearing to get clarity from Plaintiff regarding his Complaint and to discern if an amendment would be legally feasible.  However, Plaintiff failed to appear for the hearing.  As the Court currently understands Plaintiff's Complaint, it believes any amendment would be futile, and thus recommends dismissal for the reasons set forth below.

---

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[14] *Id.*
[15] *Hall,* 935 F.2d at 1110 (citations omitted).
[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[17] *Hall*, 935 F.2d at 1109–10.

### B.   Federal Question Jurisdiction

Plaintiff asserts federal question jurisdiction based on six federal statutes.  For federal question jurisdiction under 28 U.S.C. § 1331 to exist, the action must arise "under the Constitution, laws, or treaties of the United States."  This means Plaintiff's Complaint must establish either "that federal law creates the cause of action" or that "the right to relief necessarily depends on resolution of a substantial question of federal law."[18]  But, as discussed below, Plaintiff's Complaint fails to establish how these statutes create a federal cause of action and/or fails to state a claim upon which relief can be granted.[19]

### 1.   Foreign Corrupt Practices Act of 1977

On page 3 of the Complaint, Plaintiff lists the Foreign Corrupt Practices Act of 1977 ("FCPA")[20] as being at issue in this case.  The FCPA is enforced by the Department of Justice and the Securities and Exchange Commission.[21]  It prohibits certain U.S.-related individuals and businesses from bribing foreign government officials in order to obtain or retain  a business interest.[22]  The FCPA, however, does not create a civil cause of action.[23]  But, even if it did, Plaintiff has alleged no facts stating an individual or business bribed a

---

[18] *Firstenberg*, 696 F.3d at 1022.

[19] *See id.* at 1023 (stating the "well-pleaded complaint rule restricts the exercise of federal question jurisdiction to instances in which a federal claim is made manifest within the four corners of the plaintiffs' complaint.") (citing *Viqueira v. First Bank*, 140 F.3d 12, 17 (1st Cir. 1998)).

[20] 15 U.S.C. §§ 78dd-1, *et seq*.

[21] *See* A Resource Guide to the U.S. Foreign Corrupt Practices Act. Second Edition. Chapter 1 at p. 1, (July 2020), www.justice.gov/criminal/criminal-fraud/file/1292051/dl?inline.

[22] *Id.*

[23] *Republic of Iraq v. ABB AG*, 768 F.3d 145, 171 (2d Cir. 2014) ("We conclude that there is no private right of action under the antibribery provisions of the FCPA and that the district court did not err in dismissing the Republic's FCPA claims."); *Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1027-1030  (6th Cir. 1990) (holding the FCPA does not create an implied private right of action).

foreign government official to benefit a business interest. Thus, the Court cannot reasonably infer that any Defendant would be liable for any alleged FCPA misconduct, and therefore recommends dismissal of this claim.

### 2. Federal Criminal Statutes

Plaintiff also asserts claims under three federal criminal statutes. The first two are 18 U.S.C. §§ 2261 and 2261A, which deal with interstate domestic violence against "a spouse, intimate partner, or dating partner"[24] and interstate stalking. The Complaint is void of any statement referencing any party being a spouse, intimate partner, or dating partner of the other, as required by 18 U.S.C. § 2261. More importantly, these statutes do not create a civil cause of action.[25] And specifically, while 18 U.S.C. § 2261A criminally prohibits interstate stalking, which appears to be the gist of Plaintiff's Complaint, it does not "provide civil remedies or set forth procedures for obtaining and/or enforcing a civil protective order against an alleged stalker or harasser."[26]

The third statute, 18 U.S.C. § 1030, concerns fraud and related activity in connection with computers. Unlike most criminal statutes, 18 U.S.C. § 1030(g) does provide a limited civil cause of action against those who knowingly access a computer

---

[24] 18 U.S.C. § 2261(a).
[25] *See Rock v. BAE Sys.*, 556 F. App'x 869, 870–71 (11th Cir. 2014) (holding that 18 U.S.C. §§ 2261 and 2261A do not provide a private right of action); *Humphrey v. Pa. Court of Common Pleas of Phila.*, 462 F. Supp. 3d 532, 534 n.2 (E.D. Pa. 2020) (dismissing claims premised on 18 U.S.C. §§ 2261-2262 and noting that numerous federal courts hold that no private right of action exists under these statutes); *Pennington v. Meyers*, No. 21-2591-DDC-JPO, 2022 WL 656163, at *4 (D. Kan. Mar. 4, 2022)) (finding no civil cause of action under 18 U.S.C. § 2261A).
[26] *Ortiz v. Perry*, No. 17-CV-489-JHP-JFJ, 2017 WL 11473894, at *3 (N.D. Okla. Sept. 26, 2017), report and recommendation adopted, No. 17-CV-489-JHP-JFJ, 2017 WL 11473895 (N.D. Okla. Oct. 23, 2017).

"without authorization or exceeding authorized access."[27] But, the only allegations in the Complaint involving a computer state Defendant Paxton spread "false information" about Plaintiff through a "computer network, which carries a $40,000 bond on [Plaintiff's] body if captured by local governments."[28] Thus, there are no facts stating any Defendant knowingly accessed a computer without, or in excess of, authorization.

Based on the above, Plaintiff has not established that these statutes create a federal civil claim for which relief can be granted. The Court therefore recommends dismissal of any claim premised on these statutes.

### 3.       Definitions at 28 U.S.C. § 4101

Plaintiff additionally lists 28 U.S.C. § 4101 as a cause of action. This statute provides definitions for use in the recognition and enforcement of foreign defamation judgments.[29] A "foreign judgment" is defined as "a final judgment rendered by a foreign court."[30] The term "foreign court" means a "court, administrative body, or other tribunal of a foreign country."[31] While "defamation" is mentioned in Plaintiff's Complaint, he does not state anything about a foreign judgment. Therefore, Plaintiff has alleged no facts on which a recognized legal claim could be based under this statute, and dismissal is recommended.

---

[27] *Geist v. Kansas State Univ. Found.*, No. 23-01129-JWB, 2023 WL 8088790, at *5 (D. Kan. Nov. 21, 2023) (citing 18 U.S.C. § 1030(a)).
[28] *See* ECF No. 1 at pp. 5 and 11.
[29] *See* 28 USCA §§ 4101-4105.
[30] 28 U.S.C. § 4101(4).
[31] 28 U.S.C. § 4101(3).

### 4. 42 U.S.C. § 1983

Finally, Plaintiff asserts claims under 42 U.S.C. § 1983, which provides a civil remedy for Constitutional violations committed by state officials. To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of United States and must show the alleged deprivation was committed by persons acting under color of state law.[32] A defendant in a § 1983 suit acts under color of state law when a position given by the state is abused.[33]

With regard to both Markesha and Sally Muhammad, Plaintiff fails to allege sufficient facts showing they are acting under color of state law. Plaintiff only says they are "informants." Plaintiff gives no details regarding what this means, what their position with the state is, or whether they were abusing this position during the incidents alleged in the Complaint.

Moreover, the alleged incidents described in the Complaint are mostly conclusory. Plaintiff alleges both Sally and Markesha Muhammad gave his "information" to the police. But, there are no facts regarding what information was given or why. With Sally, Plaintiff alleges she inflicted "psychological abuse" on him knowing that he has a "mental disability" to "distort, confuse, and influence his thoughts and actions." With Markesha, he alleges she continues to "manipulate and abuse" and "harass" him. However, the are no details regarding either Sally's "psychological abuse" or Markesha's continued manipulation, abuse and harassment. Plaintiff also fails to allege how these

---

[32] *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2550 (1988).
[33] *Id.* at 49-50.

actions are Constitutional violations, or even what specific Constitutional laws are at issue. Thus, Plaintiff alleges nothing more than labels and conclusions, and these claims do not raise the right to relief beyond a speculative level.[34]

The Court acknowledges Plaintiff does, however, assert several specific facts regarding Markesha. He alleges she sent him a threatening text message, threw a rock through a window of a house where he was staying, physically assaulted him and stole from him. But, there no facts alleging she was a state actor during these incidents. Moreover, Plaintiff fails to identify what Constitutional law is at issue or how these actions violated the Constitution. Therefore, Plaintiff has not plead sufficient facts to allow the Court to reasonably conclude Markesha or Sally is liable for any alleged conduct under § 1983.[35]

Plaintiff's allegations toward Defendant Paxton suffer the same fate. While Plaintiff states Paxton is the Attorney General of Texas, which plausibly asserts Paxton is a state actor, the rest of the allegations against Paxton are conclusory and fail to assert how any Constitutional provision was violated.

Plaintiff alleges on February 16, 2024, Paxton "executed his plan" to put Plaintiff in jail and extort money from him and the federal government. Plaintiff alleges Paxton used his position of power to spread "false information" about him through a "computer network, which carries a $40,000 bond on [Plaintiff's] body if captured by local governments." He accuses Paxton of "incompetence and negligence." Plaintiff further

---

[34] *See supra* n.16.
[35] *See supra* n.14.

alleges Paxton is using Markesha and Sally Muhammad as "informants" to commit a "federal crime" against him and is encouraging "domestic violence" against him because he is a black male with a mental disability.

However, no factual details are given regarding the plan, extortion of money, false information, or bond.  Plaintiff also fails to state how Paxton is incompetent and negligent.  Nor does Plaintiff explain how Paxton is using either Sally or Markesha Muhammad as "informants" or what "federal crime" and "domestic violence" is being committed.  As stated earlier, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[36]  The Court therefore recommends dismissal of any claim against Paxton under 42 U.S.C. §1983.

### C.     Diversity Jurisdiction

In addition to federal question jurisdiction, Plaintiff also asserts diversity jurisdiction, which is governed by 28 U.S.C. §1332.  Under this statute, a plaintiff must show complete diversity of citizenship between opposing parties and the amount in controversy "exceeds the sum or value of $75,000."[37]

Here, while Plaintiff states he is a citizen of Kansas, he fails to assert the citizenship of all three Defendants.[38]  Plaintiff does list the Defendants' addresses and mentions Markesha Muhammad resides in Texas.[39]  However, a person's residence is not

---

[36] *Bellmon*, 935 F.2d at 1110 (citations omitted).
[37] 28 U.S.C. § 1332(a).
[38] *See* ECF No. 1, p. 3.
[39] *Id*. at pp. 2, 8, 10, and 11.

relevant for determining citizenship.[40] Without more, allegations of residency are insufficient to confer diversity jurisdiction on the Court.[41]

Plaintiff also fails to state the amount in controversy "exceeds the sum or value of $75,000."[42] Plaintiff is not requesting monetary damages, but is asking the Court to enter a "cease and desist" order to stop purported "defamation (cyber libel)" and "harassment" by Defendants.[43] In actions seeking declaratory or injunctive relief, "the amount in controversy is measured by the value of the object of the litigation."[44] Plaintiff fails to state the value to him of obtaining the "cease and desist" order exceeds $75,000. In fact, no monetary figures are contained anywhere in the Complaint.[45]

Moreover, the Court is not certain it could even issue such an order. First, Plaintiff has made no factual or legal assertions regarding defamation. He only alleges Defendant Paxton spread "false information" about him. And second, Plaintiff has

---

[40] *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015) ("An individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship.").
[41] *Id.* (citing *Whitelock v. Leatherman*, 460 F.2d 507, 514 n.14 (10th Cir. 1972) (holding that an allegation of residency is "insufficient to confer jurisdiction upon the District Court")).
[42] *See* ECF No. 1 at pp. 3-4 (leaving blank the space asking for an explanation of why the amount at stake is more than $75,000).
[43] *Id.* at p. 4.
[44] *Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021) (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006).
[45] *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Bottling Grp. L.L.C.*, No. 07-2315-JAR, 2007 WL 2954038, at *2 (D. Kan. Oct. 10, 2007) (stating that the Tenth Circuit follows the "either viewpoint rule," which considers "either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum.") (citations omitted).

provided no legal authority, state or federal, stating this Court has jurisdiction to issue a civil protective order, particularly in the form of relief requested.[46]

## IV. Conclusion

After careful consideration of Plaintiff's Complaint, being aware Plaintiff proceeds *pro se*, and affording Plaintiff the opportunity to appear and assist the Court in understanding his claims, for which he did not appear, the undersigned determines the Complaint lacks subject-matter jurisdiction and fails to state a claim upon which relief can be granted. And, because the undersigned believes any amendment would be futile, dismissal without prejudice is recommended.

**IT IS THEREFORE RECOMMENDED** to the District Judge that this case be dismissed without prejudice for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

**IT IS ORDERED** that the Clerk's Office shall mail a copy of this Report and Recommendation and Notice to Daytona Bae, 7525 W. Taft, Wichita, KS 67209, by regular mail.

Dated May 22, 2024, at Wichita, Kansas.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[46] *See, e.g., Warner v. Floyd*, No. 16-4143-SAC, 2016 WL 11200724, at *1 (D. Kan. Dec. 22, 2016) (declining to issue a "Civil Harassment order against all defendants" as requested by plaintiff under state law); *see supra* n.26.